The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan S. Chapman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. Tyson Foods, Inc. was a self-insured employer.
4. The date of the alleged injury was February 25, 1993.
5. Plaintiff's last date of work for defendant was August 31, 1995.
In addition, the parties stipulated into evidence the following:
1. Eighty-two pages of medical records and reports.
2. Two pages of worker's and supervisor's accident reports.
3. Leave of absence forms for 1993 and 1994.
4. Attendance calendars for 1993 through 1995.
6. Yearly income print-out.
7. Termination notice.
8. Form 22 wage chart.
9. Eight additional pages of medical records and reports by Dr. Brenner which were submitted after the hearing.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff began working for defendant in July 1992 at its tortilla processing facility. She was a production worker and would alternate between four positions on the production line. The first position, screening, involved inspecting the tortillas as they came down the line for dirt or defects and picking up the defective ones to put in the trash. The next position was bagging the tortillas, then sealing them, where the bags were sealed shut, and finally there was boxing or packing where the bags of tortillas were placed in boxes for shipment.
2. On February 25, 1993 while plaintiff was working in the packing section, some boxes became jammed on the conveyor. She reached under the catwalk and pushed the boxes to get them moving. When she straightened up, she noticed pain in her upper chest area near her collarbone and some stiffness in her left shoulder. She reported the incident to her lead person and was sent to the nurse. After describing her symptoms, she told him that she had hurt herself pushing boxes onto the conveyor. The nurse did not send her to the doctor that day. However, when she returned with continued complaints on March 4, 1993 she was sent to Dr. MacIntosh who did not think her condition was work related.
3. Defendant subsequently sent plaintiff to Dr. Ciliberto on March 8, 1993. He ordered nerve tests which were consistent with carpal tunnel syndrome on the left and he treated her with medication and a splint. She apparently had an adverse reaction to the medication and was hospitalized overnight. Plaintiff was not happy with him because of her drug reaction, so defendant then sent her to Dr. Beemer who examined her on April 22, 1993. She was complaining of pain from her left hand to her neck on that occasion. Her carpal tunnel symptoms improved by May 6 but she was then complaining of left shoulder pain. Dr. Beemer subsequently ordered nerve tests and noted findings which could be consistent with myofascial pain. The neurologist who tested her found no abnormalities on testing but found probable myofascial trigger points in her left trapezius on examination. An MRI of her neck was also performed and it did not reveal any significant findings. Consequently, Dr. Beemer diagnosed her condition as myofascial pain syndrome which in his opinion was not related to her job on an ongoing basis. He recommended treatment at a pain clinic.
4. Plaintiff was then evaluated by Dr. Smoot on August 6, 1993. In his opinion, her pain was not coming from her cervical spine and there was no neurologic involvement, but she might have had a mild trapezius pull without rupture or tearing of the muscle.
5. Plaintiff then went to Dr. McFarlane. Since she was complaining of numbness in her forearm and last two fingers, he was concerned that she had a cervical radiculopathy, so he ordered further tests. However, none of the diagnostic tests revealed any evidence of a cervical spine problem so he also ultimately concluded that she had myofascial pain syndrome which was due to her injury of February 1993. He treated her conservatively with medication, physical therapy, restricted activities and trigger point injections.
6. Dr. Brenner also evaluated plaintiff on February 24, 1994. He, too, found that there was no evidence of discogenic or neurocompressive disease. His impression was that she initially sustained a trapezial muscle sprain and that she was then presenting with myofascial symptoms.
7. Dr. McFarlane continued to treat plaintiff for her myofascial pain syndrome with conservative measures. He also referred her to a pain clinic, but, when she finally went through the program, her condition did not improve. Consequently, on May 7, 1996 he determined that she had reached maximum medical improvement.
8. Plaintiff has claimed that she sustained a compensable injury on February 25, 1993 and that the conditions for which she was subsequently treated (except for the carpal tunnel syndrome) were due to the injury.
9. It was common for boxes to become jammed on the line at the packing station. It occurred four to six times per shift. Consequently, it was not unusual for plaintiff to have to push boxes in order to get them moving again. There was nothing unusual or out of the ordinary in the manner she pushed on the boxes on February 25, 1993, nor was there an interruption of her regular work routine. She did not describe losing her balance to the nurse that day or to the doctors who subsequently treated her. To the extent that she testified that she lost her balance, her testimony was not credible. She performed her regular job duties in her normal manner that day.
10. On February 25, 1993 plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant.
11. Plaintiff did not hurt her back as a result of her February 25, 1993 injury. She sustained a trapezial muscle sprain and later developed symptoms of myofascial pain syndrome.
 ***********
Based upon the findings of fact, The Full Commission concludes as follows:
 CONCLUSION OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer on February 25, 1993. G.S. § 97-2(6); Anderson v.Northwestern Motor Company, 233 N.C. 372 (1951).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. This claim is hereby DENIED.
2. Each side shall pay its own costs.
IT IS FURTHERMORE ORDERED:
1. Defendant's motion to assess the costs of Dr. McFarlane's deposition is denied.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________ CHRISTOPHER L. SCOTT COMMISSIONER
S/ _________________ DIANNE C. SELLERS COMMISSIONER